**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE HERMETIC ORDER OF THE GOLDEN DAWN, INC., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> DAVID J. GRIFFIN, <br><br> Defendant/Counter-Claimant. | No. C 05-00432 JSW <br><br> **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION** |

**INTRODUCTION**

Now before the Court is Magistrate Judge James' Report and Recommendation Re: Parties' Cross-Motions to Enforce Settlement Agreement and Defendant's Motion for Sanctions (the "Report"). (Docket No. 213.) Plaintiff has submitted an opposition to the Report, and Defendant has submitted a response to Plaintiff's Opposition. (Docket Nos. 214, 222.) Having considered the parties' papers, relevant legal authority, and the record in this case, the Court finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b).

For the reasons set forth in the remainder of this Order, the Court ADOPTS IN PART AND REJECTS IN PART Magistrate Judge James' Report. The Court REJECTS Magistrate Judge James' recommendation that the parties cross-motions be denied and the matter placed back on the calendar.

//

//

Instead, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion to Enforce the Settlement Agreement (Docket No. 170) and GRANTS IN PART AND DENIES IN PART Defendant's Cross-Motion to Enforce And/Or Set Aside Settlement Agreement (Docket No. 183). The Court ADOPTS Magistrate Judge James' Report and Recommendation regarding Defendant's Motion for Contempt And/Or Sanctions and Award of Out-of-Pocket Expenses (Docket No. 186) and shall DENY that motion.

## BACKGROUND[1]

On January 17, 2007, Plaintiff and Counter-Defendant, Hermetic Order of the Golden Dawn, Inc. ("HOGDI"), and Defendant and Counter-Claimant, David John Griffin ("Griffin"), appeared before Magistrate Judge Maria Elena James for a Settlement Conference. The parties reached an agreement at that conference, which was memorialized in writing. (*See* Declaration of Michael Cronen in Support of Plaintiff's Motion to Enforce Settlement Agreement ("Cronen Decl."), Ex. A (Settlement Agreement).) The Settlement Agreement consists of thirteen recitals, is signed by the parties and their counsel, provides that the Court retains jurisdiction to enforce its terms, contains a confidentiality clause, and provides that it "supercedes all other agreements between the parties."[2] (*See* Settlement Agreement ¶¶ 11-13.)

On February 12, 2007, the Court issued an Order in which, based upon the Settlement Agreement, it dismissed all claims and counterclaims in this action with prejudice, stated that it would retain jurisdiction to enforce the Settlement Agreement, and reserved its right to refer any motions to enforce the Settlement Agreement to Magistrate Judge James. (*See* Docket No. 167.)

The parties operated under the Settlement Agreement until on or about February 22, 2008, when HOGDI filed its motion to enforce the Settlement Agreement. Magistrate Judge James ordered that the parties appear for a further settlement conference before considering motions to enforce the agreement. (Docket No. 175.) That settlement conference was held on

---

[1] The facts underlying this dispute are set forth in this Court's Order, dated December 1, 2006, denying the parties' cross-motions for summary judgment, and they shall not be repeated here. (*See* Docket No. 116.)

[2] *See* Order Denying Cross-Motions for Summary Judgment at 2:19-4:4.

2

1  April 14, 2008, but the parties did not resolve their differences. Accordingly, Magistrate Judge
2  James permitted Griffin to file his counter-motion and set the matter down for hearing to
3  address the motions.
4        On June 5, 2008, Magistrate Judge James issued the Report.

## ANALYSIS

### A. Griffin's Motion for Sanctions is Denied.

Griffin's motion for sanctions asks that the Court impose sanctions on HOGDI for its conduct during the April 14, 2008 settlement conference. Having considered the underlying pleadings, the Court finds Magistrate Judge James' recommendation on this motion to be well-reasoned and thorough and adopts in it part on this basis. Accordingly, Griffin's motion for sanctions is denied.

The Court now turns to the cross-motions to enforce the Settlement Agreement.

### B. HODGI's Motion to Enforce is Granted in Part and Denied in Part and Griffin's Counter-Motion to Enforce or Set-Aside is Granted in Part and Denied in Part.[3]

Under Federal Rule of Civil Procedure 60(b)(6) a court may set aside a judgment for any "reason that justifies relief." "Judgments are not often set aside under Rule 60(b)(6). Rather, the Rule is used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Latshaw v. Trainer Wortham Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006) (quoting *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005), in turn quoting *United States v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir. 1993)). Even when parties have resolved litigation through settlement, a party can demonstrate that relief under Rule 60(b)(6) is warranted where the agreement fails in its

---

[3] The Court has jurisdiction to enforce the Settlement Agreement, because the parties have expressly provided for this Court's continuing jurisdiction over its enforcement. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380-81 (1994). "It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. ... However, the district court may enforce only *complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1992) (citations omitted, emphasis in original). If there are material issues of fact in dispute as to the existence or the material terms of an agreement, a court must hold an evidentiary hearing. *Id*.

3

purpose in its entirety. *See, e.g., Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991).

In her Report, Magistrate Judge James states that "[a]lthough the parties entered into a written settlement agreement, they are now unable to agree on the intent and purpose of that agreement." (Report at 2:2-3.) On that basis, Magistrate Judge James recommended that the Settlement Agreement be set aside. The Court concludes that finding is in error and does not justify relief under Rule 60(b).

"A settlement agreement is treated as any other contract for purposes of interpretation." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989). In order to interpret and enforce the Settlement Agreement, the Court looks to California law. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). "Under California law, the intent of the parties determines the meaning of the contract." *Id.* (citing Cal. Civil Code §§ 1636, 1638). The proper inquiry is to focus on the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct – rather than the subjective beliefs of the parties." *Id.* Thus, if a party does not express his or her true intent as to the meaning of a material term of a settlement agreement, that subjective intent is irrelevant. *Id.* At the hearing before Magistrate Judge James, the parties may have articulated their subjective views of how the Settlement Agreement should be interpreted. However, the parties' subjective intent is irrelevant to whether or not the Settlement Agreement should be set aside.[4]

There is no dispute that a written settlement agreement exists. In his counter-motion, Griffin proffers a host of reasons as to why the Settlement Agreement is flawed, the majority of which pertain to the merits of the underlying trademark dispute. (*See, e.g.,* Counter-Motion at 5.) Instead of pursuing those claims, however, Griffin chose to resolve them. Therefore, the Court finds these arguments unpersuasive. Further, none of Griffin's arguments suggest that any party was operating under a mistake of fact or law when they entered the agreement. The Court also rejects Griffin's argument that the Settlement Agreement was not supported by

---

[4] Neither HOGDI nor Griffin contends that the Settlement Agreement was the product of fraud.

4

adequate consideration.  Moreover, the parties allowed the terms of the Settlement Agreement to be placed on the record following the January 17, 2007 conference, and there is no evidence in the record to suggest that they did not understand the terms of the Settlement Agreement or that they did not assent to those terms.  As such, the Court concludes that the Settlement Agreement can and should be enforced.

For these reasons, Griffin's counter-motion to set aside the Settlement Agreement is denied.  Having made that determination, the Court turns to the alleged violations.

**1.   Griffin's Alleged Use of HOGDI's Mark in the United States and HOGDI's Alleged Use of Griffin's Mark in Europe and Canada.[5]**

Paragraphs 1 through 3 of the Settlement Agreement provide:

1.  HERMETIC ORDER OF THE GOLDEN DAWN, A FLORIDA NON-PROFIT CORPORATION (hereinafter known as H.O.G.D.) is sole and exclusive owner of U.S. Trademark Registration No. 2,034,866 for its mark THE HERMETIC ORDER OF THE GOLDEN DAWN & Design and Griffin will not contest the validity or H.O.G.D.'s ownership of its registered mark in this or any other proceeding, and not infringe, contest or otherwise interfere with H.O.G.D.'s use of its mark anywhere in the world.

2.  Griffin is sole and exclusive owner of European Trademark Registration No. 00063295 for THE HERMETIC ORDER OF THE GOLDEN DAWN issued by the O.H.I.M. by the European Union. H.O.G.D. will not contest the validity or Griffin's ownership of this registered mark in this or any other proceeding and not infringe, contest or otherwise interfere with Griffin's use of his mark in Europe.

3.  Griffin agrees hereafter to use the mark HERMETIC ORDER OF THE GOLDEN DAWN OUTER ORDER OF THE ROSECRUCIAN [sic] ORDER OF ALPHA ET OMEGA & Design to identify and distinguish Griffin's goods and services in the marketplace. H.O.G.D. will not contest the validity or Griffin's ownership of mark HERMETIC ORDER OF THE GOLDEN DAWN OUTER ORDER OF THE ROSECRUCIAN [sic] ORDER OF ALPHA ET OMEGA & Design in this or any other proceeding, anywhere in th [sic] world.

(Settlement Agreement ¶¶ 1-3.)

HOGDI argues that Griffin has violated paragraph 1 of the Settlement Agreement by continuing "to infringe [its] mark on internet materials distributed in the United States." (Mot.

---

[5] Griffin submits no evidence to support his argument that HOGDI has violated paragraph 9 of the Settlement Agreement, which pertains to Griffin's Canadian mark. Accordingly, Griffin's motion is denied on that basis.

5

1  at 3:20-21.) In support of this argument, HOGDI offers an excerpt from Griffin's European
2  website, which contains the words "HERMETIC ORDER OF THE GOLDEN DAWN®." That
3  website also depicts what Griffin refers to as the "triple seal design," and HOGDI contends that
4  one of those seals is the design portion of its mark that Griffin agreed to stop using. HOGDI
5  further argues that the Court should construe paragraph 2 to be limited to Griffin's word mark
6  and should require Griffin to remove the design element from his European website to comply
7  with the terms of the Settlement Agreement. It is undisputed that Griffin's European mark is a
8  word mark only. To the extent Griffin's European website uses that mark, HOGDI has agreed
9  not to interfere with Griffin's use of that word mark in Europe. Thus Griffin's use of his word
10 mark on the European website does not necessarily run afoul of the terms of the Settlement
11 Agreement.

12      HOGDI contends that because the European website can be accessed from the United
13 States, Griffin infringes upon HOGDI's mark. However, HOGDI provides no legal argument to
14 support this conclusion. Similarly, HOGDI does not adequately explain how Griffin's use of
15 the triple seal design, in combination with the word mark, on the European website infringes
16 upon its mark. Accordingly, HOGDI has not offered the Court a sufficient legal basis to
17 conclude that Griffin has engaged in conduct that infringes upon HOGDI's mark, thereby
18 violating the Settlement Agreement. HOGDI's motion is denied, without prejudice, on that
19 basis.[6]

20      Griffin in turn argues that HOGDI has infringed upon Griffin's European mark by
21 HOGDI's use of its mark on HOGDI's European website. (*See* Declaration of David John
22 Griffin, Exs. 14-16.) Griffin submits excerpts from HOGDI's British and Italian websites,
23 which contain the phrase "The Hermetic Order of the Golden Dawn®." Those excerpts also
24 include the design portion of HOGDI's mark. Paragraph 1 provides that "Griffin will not ...
25 interfere with H.O.G.D.'s use of its mark anywhere in the world." (Settlement Agreement ¶ 1.)
26 At the same time, however, HOGDI agreed that it would not infringe upon Griffin's European

---

[6] The Court also notes that it is not entirely clear from the record that the seal about which HOGDI complains is identical to the design portion of HOGDI's mark, such that Griffin should be precluded from using it in the triple seal design.

6

1  mark.  (*Id.* ¶¶ 2.)  Because the evidence Griffin has submitted in support of this claim shows
2  that HOGDI has used its complete mark (*i.e.* the word mark and design) on European websites,
3  and because the Settlement Agreement explicitly contemplates that HOGDI can use this mark
4  anywhere in the world, without interference from Griffin, the Court cannot conclude that
5  HOGDI has violated paragraph 2 of the Settlement Agreement simply by using its mark on a
6  European website.  However, like HOGDI, Griffin has not provided the Court with a sufficient
7  legal basis from which the Court could conclude that HOGDI's use of its mark infringes upon
8  Griffin's European trademark rights.  Accordingly, Griffin's motion is denied, without
9  prejudice, on this basis.

10  Griffin also makes certain arguments about an alleged HOGDI licensee's use of
11  Griffin's European marks.  However, the Court cannot discern from the record that the alleged
12  licensee referenced in Griffin's motion is the person referenced in paragraph 6 of the Settlement
13  Agreement.  In addition Mr. Cicero attests that he complied with paragraph 6 by asking Mr.
14  Zink to change the name of his organization.  That is all that paragraph 6 requires.
15  Accordingly, the Court concludes HOGDI has not violated paragraph 6.  Griffin's motion is
16  denied on that basis.

17  In his opposition and counter-motion, Griffin attacks the Settlement Agreement by
18  raising arguments that call into question the validity of HOGDI's marks, *i.e.* Griffin attempts to
19  re-argue the merits of the underlying case.  The Court recognizes that if the parties continue to
20  have differences that result in court proceedings, it may be necessary for them to set forth, in
21  neutral manner, what their positions were in this litigation.  However, Griffin expressly agreed
22  to "not contest the validity or H.O.G.D.'s ownership of its registered mark in this or any other
23  proceedings."  (Settlement Agreement ¶ 1.)  The manner in which he has attacked the
24  Settlement Agreement does just that.  The Court finds Griffin's actions violate terms and the
25  spirit of the Settlement Agreement.  HOGDI has not sought specific relief for this alleged
26  violation, but Griffin and his counsel are hereby placed on notice that if the Court is alerted to
27  any such violations in the future, they shall be subject to sanctions.
28  //

7

//

### 2.      Griffin's Application to the USPTO.

HOGDI argues that Griffin also violated paragraphs 1 and 3 of the Settlement Agreement when he submitted an application for the mark "Hermetic Order of the Golden Dawn the Rosicrucian Order of Alpha et Omega & Design." HOGDI first argues that the application did not include the "Outer Order" language required by paragraph 3. Griffin contends this was an omission and that he will amend his application accordingly. The Court orders Griffin to make this amendment within ten (10) days of the date of this Order and to provide a verification, signed under penalty of perjury, that he has done so, in order to comply with the terms of the Settlement Agreement.

HOGDI also asserts that Griffin submitted a specimen of the allegedly infringing mark to support his application for the new mark. Paragraph 3 of the Settlement Agreement refers to a word and design mark. Griffin argues that he was required to submit a specimen in order to be able to register the mark and argues that he made clear at the settlement conference that the design was the triple seal design submitted as the specimen. Further, it is not clear to this Court that the portion of the triple seal design about which HOGDI complains is identical to or so similar to the design portion of HOGDI's mark that Griffin's use of it would infringe upon HOGDI's mark. Nor is it evident from the record that Griffin gave up the right to use the triple seal design. Accordingly, the Court denies HOGDI's motion on this basis.

### 2.      Alleged Violations the Non-Disparagement Clause.

Paragraph 4 of the Settlement Agreement provides:

> Both parties shall within thirty (60) [*sic*] days of this Order remove all references to other party's mark, and to the party's agents, including without limitation, H.O.G.D.'s agents, Mr. Charles Cicero and Mrs. Tabatha Cicero, and Griffin's agents, Mr. David John Griffin, Mr. Jorge Jevia, from all materials originating or otherwise resulting from the activities of both parties, or their agents or attorneys, whether distributed anonymously or otherwise, including without limitation, any and all website materials, internet posts, discussion boards, publicity and/or promotional materials. Parties agree to use their best faith efforts to get their licensees (or equivalents) to comply with this non-disparagement agreement.

8

HOGDI contends that Griffin violated this provision in his submission to the USPTO, which repeatedly refers to HOGDI and Mr. Cicero. In that submission, Griffin also stated that HOGDI "filed a frivolous lawsuit against Griffin." (Cronen Decl., Ex. C.) HOGDI also submits other internet postings that refer to this lawsuit as frivolous and which also suggest Mr. Cicero and HOGDI have engaged in internet fraud. (*See, e.g., id.*, Ex. E.)

To the extent Griffin was required to provide the USPTO with background information on his right to use the proposed mark and information about this litigation was a necessary part of that background, the Court finds that the reference to the parties in the submission to the USPTO does not violate paragraph 4.[7] Indeed, the parties refer to that paragraph as a "non-disparagement agreement," which provides context as to what was to be removed from the parties' materials and websites. (*See* Settlement Agreement ¶ 4.) However, the characterization of this lawsuit as "frivolous" does violate the terms paragraph 4. Accordingly, Griffin is HEREBY ORDERED to remove any such postings within ten (10) days of the date of this Order and to provide a verification, signed under penalty of perjury, that he has done so. Griffin shall also amend his submission to the USPTO to remove the reference to this lawsuit as frivolous when he amends the application to comply with paragraph 3 of the application.

Griffin argues that HOGDI also has violated the non-disparagement clause of the Settlement Agreement, and he submits various internet postings to support this argument. (*See* Counter-motion at 13:20-14:15; Griffin Decl. Exs. 22-29.) With the exception of Mr. Sam Webster, there is no evidence in the record to suggest that HOGDI has control over any of the individuals who allegedly made the offending statements. The record reflects that Mr. Webster is a member of HOGDI's Board of Directors, however the evidence submitted by Griffin relates to a posting that Mr. Webster made in connection with a group called the "Open Source Order of the Golden Dawn." (*See* Griffin Decl., Ex. 23.)

Paragraph 4 of the Settlement Agreement requires the parties "to use their best faith efforts to get their licensees (or equivalents) to comply with this non-disparagement

---

[7] It is not clear why Griffin would need to have submitted the transcript on the motions for summary judgment and his trial brief to the USPTO and the submission of those materials skirts dangerously close to violating paragraph 1.

9

1   agreement." (Settlement Agreement ¶ 4.) Because Mr. Webster is a member of HOGDI's
2   Board of Directors, the Court concludes that HOGDI must use its best efforts to ensure that Mr.
3   Webster complies with the non-disparagement clause. However, there is no evidence in the
4   record to show that the Open Source Order of the Golden Dawn is a HOGDI licensee or
5   equivalent. (*See, e.g.,* Declaration of Charles Cicero.) The Court fully expects that HOGDI
6   will not engage in back door violations of paragraph 4 of the Settlement Agreement, and it will
7   not tolerate any such violations. However, the Court concludes that Griffin has not established
8   that HOGDI has violated this provision of the Settlement Agreement. Accordingly, Griffin's
9   motion is denied in part on this basis.[8]

### 3. Alleged Violations of the Confidentiality Clause.

Paragraph 12 of the Settlement Agreement provides that "[t]he terms of this Agreement shall not be published by the parties or their respective agents, and the terms of this Agreement shall remain confidential except to the extent necessary to effectuate the terms of this Agreement." (Settlement Agreement ¶ 12.)

HOGDI contends that Griffin violated paragraph 12 of the Settlement Agreement in his submission to the USPTO, because he provided a copy of the Settlement Agreement. HOGDI also contends that Griffin has referred to the Settlement Agreement on internet postings and referred persons interested to the Court's electronic docket.[9] HOGDI does not argue that disclosure of the Settlement Agreement to the USPTO was unnecessary to effectuate its terms. As such, the Court finds that disclosure does not violate the Settlement Agreement. In addition, because the Settlement Agreement was filed under seal and the parties were precluded from disclosing or publishing its terms, the Court finds that the references to the existence of the Settlement Agreement also do not violate paragraph 12.

---

[8] Griffin also complained about a website operated by Sesheta Publications. HOGDI submits a declaration asserting that Mr. Cicero requested that the offending material be removed. (Cicero Decl., ¶ 3.)

[9] The internet posting submitted by HOGDI does not refer specifically to the Settlement Agreement. Rather, it states that "[a]nyone wishing to read the details of the aforementioned lawsuit may download the complete docket from the 'Pacer' website of the U.S. Federal Court system and searching for case C05-432JSW." (Cronen Decl., Ex. E.)

10

However, Griffin submitted a complete copy of the Settlement Agreement as an exhibit to the application submitted to the USPTO, which the general public can access and open. Accordingly, the Court concludes that Griffin and his counsel violated paragraph 12 by not taking steps to ensure the confidentiality of the Settlement Agreement, at the time they submitted the application to the USPTO. As Griffin notes, HOGDI violated paragraph 12 when it filed, in the public record, a copy of the Settlement Agreement as an exhibit to its motion to enforce the agreement. Thus, both parties have violated paragraph 12, and the terms of the Settlement Agreement are now in the public domain. The Court concludes that imposing sanctions on the parties is not warranted.

### 4. HOGDI's Alleged Violations of Paragraph 5.

Paragraph 5 of the Settlement Agreement requires that "[b]oth parties shall not unlawfully or improperly interfere with ... each other's business or other activities, or otherwise hinder impede [*sic*] each other's activities in the future, anywhere in the world." Griffin argues that HOGDI also has violated this provision of the Settlement Agreement and submits internet postings in support of this argument. (*See* Counter-Motion at 15:16-16:23; Griffin Decl., Exs. 36-40.) Again, however, there is no evidence in the record linking the individuals who allegedly interfered with Griffin's business and activities to HOGDI. Accordingly, Griffin's motion is denied on this basis.

### CONCLUSION

For the foregoing reasons, the Court adopts in part and rejects in part Magistrate Judge James' Report and Recommendation, denies Griffin's motion for sanctions, denies Griffin's counter-motion to set aside the Settlement Agreement, and grants in part and denies in part (the parties' motions to enforce the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: July 24, 2008

JEFFREY S. WHITE  
UNITED STATES DISTRICT JUDGE

11